CITY OF PHILADELPHIA, Appellant,

v.

OLS HOTEL PARTNERS, L.P. t/a The Four Seasons Hotel Philadelphia.

City of Philadelphia,

v.

OLS Hotel Partners, L.P. t/a The Four Seasons Hotel Philadelphia, Appellant.

City of Philadelphia,

v.

Central Parking Systems of Pennsylvania, Inc., Appellant.

Commonwealth Court of Pennsylvania.

Argued June 7, 2001.

Decided July 26, 2001.

Reargument En Banc Denied Oct. 3, 2001.

Craig D. Ginsburg, Philadelphia, for appellant, City of Philadelphia.

Stewart M. Weintraub, Philadelphia, for appellant, Central Parking Systems of PA, Inc.

David M. Kuchinos, Philadelphia, for appellee.

Before DOYLE, President Judge, FRIEDMAN, J., and MIRARCHI, Jr., Senior Judge.

FRIEDMAN, Judge.

The City of Philadelphia (City), OLS Hotel Partners, L.P., t/a The Four Seasons Hotel Philadelphia (OLS Hotel) and Central Parking Systems of Pennsylvania, Inc. (Central Parking) appeal from the December 23, 1999 orders of the Court of Common Pleas of Philadelphia County (trial court), which affirmed in part and reversed in part the June 29, 1999 decision of the Tax Review Board (Board) relating to the extent that OLS Hotel, Central Parking and Standard Parking Corporation (Standard Parking) are liable for the City's parking tax.

The parties have filed a Stipulation of Facts in this matter. OLS Hotel is the owner of the Four Seasons Hotel in Philadelphia, which offers its guests valet parking service. The valet parking service is possible because of a December 21, 1983 easement agreement between OLS Hotel and the owner of the parking garage located at 18th and Cherry Streets in Philadelphia. The easement agreement gives OLS Hotel "a perpetual non-exclusive easement in, over and through the Garage Property for parking of ninety (90) passenger motor vehicles in the Garage and for pedestrian and vehicular ingress and egress to and from the Garage and the Garage Property in connection with the use of such park-

ing." (Stipulation of Facts, Nos. 1, 5; R.R. at 67a–68a.)

By agreement dated September 23, 1996, OLS Hotel agreed to pay the owner of the parking garage, pursuant to the easement agreement, $33,000.00 per month, plus an additional $8.00 for each use in excess of 60,000 uses per year. The agreement designates a specific valet parking area for hotel use. During the period at issue here, valets at the hotel parked the vehicles of registered guests and transient guests in the parking garage, and OLS Hotel made the required payment to the parking garage operator. (Stipulation of Facts, Nos. 10–12; R.R. at 69a–70a.)

The hotel charged registered guests $24.00 per day on weekdays and $18.00 per day on weekends for the use of its valet parking service. These parking charges were added to the registered guests' invoice and were paid at the hotel's front desk. The hotel charged transient guests a fee for the use of the valet parking service based on the number of hours that the guests parked their vehicles in the garage. For transient guests, the hotel collected the parking fee when the guests returned to pick up their vehicles.[1]

Ordinary users of the parking garage receive a parking ticket from a machine as they enter the parking garage. This ticket is returned to the attendant for payment upon exiting the parking garage. Some individuals pre-pay a monthly fee and receive a card that, when electronically scanned, allows them to enter and exit the parking garage. (Stipulation of Facts, Nos. 17–18; R.R. at 72a.)

On November 1, 1991, Standard Parking entered into a management agreement with the owner of the parking garage that remained in effect until August 31, 1997. On September 1, 1997, Central Parking entered into a management agreement that superseded the arrangement with Standard Parking. (Stipulation of Facts, Nos. 6–8; R.R. at 68a–69a.)

By letter dated May 7, 1997, the City advised the predecessor in interest to OLS Hotel that it was responsible for collecting the City's parking tax. On July 17, 1997, OLS Hotel sought a ruling from the City's Revenue Department as to whether OLS Hotel was required to collect the City's parking tax from guests and patrons that use the hotel's valet parking service. The Revenue Department concluded in correspondence dated November 10, 1997 that OLS Hotel was required to do so. (Stipulation of Facts, Nos. 3–4, Exhibit B; R.R. at 67a–68a, 77a.)

On December 15, 1997, OLS Hotel paid $14,166.60 to the City, representing the parking tax for the month of November 1997. The amount was based on the valet service receipts for that month. By letter dated April 2, 1998, OLS Hotel filed a petition for refund of this payment. By letter dated April 20, 1998, the City denied the refund request. (Stipulation of Facts, Nos. 19–21; R.R. at 72a–73a.)

On January 20, 1998, Standard Parking filed an amended parking tax return with the City, covering the months of March through August 1997. The amended return reported monies received from OLS Hotel and included payment of the parking

---

1. A guest pulls up to the hotel entrance and turns the vehicle over to a valet. The valet parks the vehicle in the parking garage, using a key card to gain entrance. The valet gives the guest the bottom part of a ticket; the valet retains the top and middle part of the ticket. When the guest returns for the vehicle, the guest gives the bottom part to the valet, and the valet retrieves the guest's vehicle, using a key card to gain entrance to the parking garage. The valet discards the middle part of the ticket and retains the top and bottom parts. (Stipulation of Facts, Nos. 13–16; R.R. at 70a–72a.)

tax based on those receipts. On April 2, 1998, Standard Parking filed a petition with the City seeking a parking tax refund of $38,728.80, covering the period from December 1996 through August 1997. Standard Parking sought the refund as a protective measure. The amount was based on what OLS Hotel paid to Standard Parking during that period. By letter dated April 20, 1998, the City denied the refund request. (Stipulation of Facts, Nos. 22–24; R.R. at 73a–74a.)

On April 17, 1998, Central Parking filed a petition with the City seeking a parking tax refund of $17,212.80, covering the period from September 1997 through December 1997. Central Parking sought the refund as a protective measure. The amount was based on what OLS Hotel paid to Central Parking during that period. By letter dated April 30, 1998, the City denied the refund request. (Stipulation of Facts, Nos. 25–26; R.R. at 74a–75a.)

Standard Parking and Central Parking joined OLS Hotel in seeking review by the Board. They did so as a protective measure in the event that the Board determined that OLS Hotel is liable for the parking tax for the same period in which the two parking garage operators paid the parking tax on receipts attributable to the same vehicles. (Stipulation of Facts, No. 27; R.R. at 75a.)

The Board held oral argument on the matter, during which the City modified its position to seek parking taxes from OLS Hotel only on the difference between its valet receipts and the amount paid to Standard Parking and Central Parking. In a June 29, 1999 decision, the Board denied the refund requests of Standard Parking

and Central Parking. With respect to OLS Hotel, the Board concluded that OLS Hotel was not required to pay the parking tax because it is not an "operator" of a "parking facility" under The Philadelphia Code Chapter 19–1202(1)(b). Therefore, the Board granted the refund request of OLS Hotel.

■ The City appealed to the trial court from the Board's order granting OLS Hotel's refund request. In addition, Standard Parking and Central Parking, continuing their protective refund position, each appealed the Board's order denying their respective refund requests. In three orders issued on December 23, 1999, the trial court affirmed the Board with respect to Standard Parking and Central Parking but reversed the Board as to OLS Hotel. The trial court explained that OLS Hotel was charging its guests for parking and that the parking "transaction" was subject to the parking tax. The City, OLS Hotel and Central Parking filed appeals, and, on April 20, 2000, the trial court issued an opinion addressing the issues raised in the parties' statement of matters complained of on appeal.[2]

On appeal, the City argues that the trial court erred by failing to address whether OLS Hotel, as operator of a valet parking service, is solely liable for the collection and payment of the parking tax from the gross receipts of that operation regardless of any contractual obligation of Central Parking to pay the parking tax on behalf of OLS Hotel.

OLS Hotel argues that the trial court erred in reversing the Board with respect to OLS Hotel without holding as a matter of law that OLS Hotel is the operator of a

---

2. Our scope of review is limited to determining whether constitutional rights were violated, whether an error of law was committed or whether the necessary findings of fact are supported by substantial evidence. Section 754 of the Administrative Agency Law, 2 Pa. C.S. § 754.

parking facility. OLS Hotel maintains that Standard Parking and Central Parking were operators of the entire parking garage, to the exclusion of OLS Hotel, and, therefore, they must pay the parking tax from the payments made to them by OLS Hotel.

Central Parking argues that OLS Hotel is the operator of an exclusive parking facility consisting of ninety spaces in the parking garage, that the easement fee OLS Hotel pays to Central Parking is not a parking charge subject to the parking tax and that, therefore, Central Parking is entitled to a refund of the monies attributable to the easement fee that was erroneously included in Central Parking's parking tax remittance to the City.[3]

In resolving these disparate positions, we look first to section 19–1202(1)(b) of the Philadelphia Code, which provides, in pertinent part, as follows:

> There is hereby imposed upon every person parking or storing a motor vehicle in or on any *parking facility* in the City … a tax of fifteen percent (15%) of the amount charged for the *transaction,* which tax shall be collected by the *operator* from the person parking or storing the vehicle, and shall be paid over to the City as provided herein.

A "parking facility" is "[a]ny outdoor or indoor area or space where more than three (3) motor vehicles may be parked or stored for a charge, fee or other consideration. …." Section 19–1201(2) of the Philadelphia Code. An "operator" is "[a]ny persons conducting or operating a parking facility." Section 19–1201(3) of the Philadelphia Code. A "transaction" is the "act of parking or storing a motor vehicle in or on a parking facility in the City, for a financial consideration, or its equivalent, under an express or implied contract." Section 19–1201(4) of the Philadelphia Code.

▆▆▆ Initially, we recognize that, because the ninety spaces are an "outdoor or indoor area or space where more than three (3) motor vehicles may be parked or stored for a charge," the ninety spaces constitute a "parking facility" within the meaning of section 19–1201(2) of the Philadelphia Code. Having made this determination, the next question is whether OLS Hotel is the "operator" of that parking facility. The facts in this case indicate that OLS Hotel is *not* the "operator" of those ninety spaces. Indeed, the management agreement between the parking garage owner and Central Parking states that Central Parking is to "operate" the parking garage. (Stipulation of Facts, Exhibit E; R.R. at 148a.) Because the ninety spaces are part of the parking garage, Central Parking is their "operator." [4]

As the "operator" of the ninety spaces, Central Parking collects $33,000.00 each month from OLS Hotel for the parking of ninety motor vehicles. Thus, OLS Hotel is

---

**3.** Amicus Curiae Urban Growth Property Trust and Interparking, Inc. (Amicus) argues that OLS Hotel utilizes its easement rights to operate a parking facility in the parking garage and that OLS Hotel is solely liable for the parking tax on the amount it charges its guests to use the valet parking service. Amicus contends that the easement payments for the right to use the parking garage are *not* payments subject to the parking tax. Amicus further contends that the parking garage operator is not responsible for remitting any part of the parking tax on the valet parking service offered by OLS Hotel.

**4.** Central Parking contends that it is *not* the "operator" of the ninety spaces and that there are two "operators" of the parking garage, Central Parking and OLS Hotel. However, this is contrary to Central Parking's management agreement with the owner of the parking garage.

the "person" parking the motor vehicles in the "parking facility" for a fee.[5] Of course, then, the "transaction" fee that is subject to the parking tax is the $33,000.00 per month payment, plus the $8.00 per use when the number of uses exceeds 60,000 in a year.[6]

We also point out that the hotel guest is *not* involved in the taxable "transaction" here. The hotel guest simply leaves a motor vehicle with a valet. The guest does *not* park or store the vehicle in the parking garage; rather, the *hotel* parks or stores the vehicle in the parking garage.[7] Central Parking, the "operator" of the parking garage, allows the hotel to park or store a vehicle in one of the ninety spaces because the hotel, the "person" parking or storing the vehicle, has given the "operator" financial consideration as part of a "transaction." The hotel guest, on the other hand, has given the "operator" nothing to park or store the vehicle in the parking garage.[8]

Accordingly, we reverse the trial court's ruling as to OLS Hotel, and we affirm in all other respects.

### ORDER

AND NOW, this 26th day of July, 2001, the order of the Court of Common Pleas of Philadelphia County, dated December 23, 1999, at No. 9904–3244, is hereby reversed. The orders of the Court of Common Pleas of Philadelphia County, dated December

---

**5.** OLS Hotel is like the ordinary user of the parking garage who pays a flat fee each month and receives a key card.

**6.** Central Parking refers to these payments as easement fees. However, the agreement between OLS Hotel and the parking garage owner, entered into pursuant to the easement, indicates that the fees are for the parking of passenger cars.

23, 1999, at Nos. 9904–3525 and 9904–3522, are hereby affirmed.

---

**7.** Obviously, if the ninety spaces are full, the valet would have to park or store a vehicle somewhere else.

**8.** The City's position here would require this court to conclude that the hotel and the hotel guest *both* are parking or storing the same vehicle in the same space at the same time.